UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

E. JEAN SMILEY,

                Plaintiff,

      v.

MICHAEL J.  ASTRUE,[1]
Commissioner of Social Security,

                Defendant.

_____

Civil No. 06-456-HA

OPINION AND ORDER

HAGGERTY, Chief Judge:

      Plaintiff E. Jean Smiley brought this action pursuant to 42 U.S.C. § 405(g) of the Social

Security Act (the Act).  Plaintiff requests review of a final decision by the Commissioner of the

_____

1  On February 12, 2007, Michael J. Astrue became Commissioner of Social Security and he is
substituted in these proceedings as such.  42 U.S.C. § 405(g); Fed. R. Civ. P. 25 (d)(1).

1  -- OPINION AND ORDER

Social Security Administration (SSA) denying her application for Supplemental Security Income benefits (SSI). She seeks an order reversing the Commissioner's decision and remanding her case for an award of benefits.

This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). After reviewing the record of this case and counsel's arguments fully, this court concludes that the Commissioner's decision must be reversed and remanded for an immediate calculation and award of benefits.

## ADMINISTRATIVE HISTORY

Plaintiff applied for SSI protectively on February 9, 2001. Tr. of Admin. R. (hereinafter, Tr.) 14, 71. She alleged that her disability began on January 12, 2001, stemming from a major depressive disorder. Her application was denied initially and upon reconsideration. Plaintiff requested a hearing before an Administrative Law Judge (ALJ). A hearing was held on November 4, 2002, at which the ALJ heard testimony from plaintiff, who was represented by an attorney, plaintiff's friend, and a vocational expert (VE). The ALJ issued a ruling on March 25, 2003, concluding that plaintiff was not entitled to benefits. This decision became the Commissioner's final decision when the Appeals Council denied review nearly three years later, on February 3, 2006. *See* 20 C.F.R. §§ 404.981, 416.1481, 422.210.

Plaintiff subsequently filed a Complaint seeking this court's judicial review. The first two sentences of Section 405(g) provide that any individual may obtain a review of a final decision of the Commissioner of Social Security made after a hearing to which the individual was a party, irrespective of the amount in controversy. This review is obtained in the district court of the United States for the judicial district in which the plaintiff resides.

## FACTUAL BACKGROUND

Plaintiff was fifty-two years old at the time of the ALJ's decision.  Plaintiff has a high

school education.  Tr. 14.  Her work experience includes cook, kitchen helper/food preparation,

home health care aide, and telemarketer.  Tr. 21.  Details of her medical history will be

addressed as necessary throughout this ruling.

## STANDARDS

To establish an eligibility for benefits, a plaintiff has the burden of proving an inability to

engage in any substantial gainful activity (SGA) "by reason of any medically determinable

physical or mental impairment" that has lasted or can be expected to last for a continuous period

of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation process for

determining if a person is eligible for benefits because of disability.  20 C.F.R. §§ 404.1520,

416.920; *see also Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

First, the Commissioner determines whether the claimant is engaged in SGA.  If the

claimant is so engaged, disability benefits are denied.

If not, the Commissioner proceeds to step two and determines whether the claimant has a

medical impairment that meets the regulatory definition of "severe."  20 C.F.R. § 404.1520(a).  If

the claimant lacks this kind of impairment, disability benefits are denied.  20 C.F.R. §

404.1520(c).

If at least some of the claimant's impairments are severe, the Commissioner proceeds to

the third step to determine whether the impairment is equivalent to one or more impairments that

the Commissioner has recognized to be so severe that they are presumed to preclude SGA.  *See*

20 C.F.R. § 404.1520(d). These are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"). If the claimant's condition meets or equals one in the Listing of Impairments, the claimant is presumed conclusively to be disabled.

If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from engaging in work that the claimant has performed in the past. If the claimant is able to perform his or her former work, a finding of "not disabled" is made and disability benefits are denied. *See* 20 C.F.R. § 404.1520(e).

If the claimant is unable to perform work that he or she has performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience.

In this five-step framework used by the Commissioner, the claimant has the burden of proof as to steps one through four. Accordingly, the claimant bears the initial burden of establishing his or her disability.

However, in step five, the burden shifts to the Commissioner to show there are a significant number of jobs in the national economy that the claimant can perform given his or her residual functional capacity (RFC), age, education, and work experience. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).

If the Commissioner cannot meet this burden, the claimant is considered disabled for purposes of awarding benefits under the Act. *See* 20 C.F.R. § 404.1520(f)(1). If the Commissioner meets this burden, the claimant is deemed not disabled for purposes of determining benefits eligibility. 20 C.F.R. §§ 404.1566, 404.1520(g).

4 - OPINION AND ORDER

The Commissioner's decision must be affirmed if it is based on proper legal standards and its findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is more than a scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted). The Commissioner's denial of benefits is upheld even if the evidence is susceptible to more than one rational interpretation, as long as one of the interpretations supports the decision of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted); *Andrews*, 53 F.3d at 1039-40.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Tackett*, 180 F.3d at 1098 (quotation and citation omitted). The Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in instances in which the evidence would support either outcome. *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003) (citation omitted); *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998) (citation omitted).

However, a decision supported by substantial evidence still must be set aside if the Commissioner did not apply proper legal standards in weighing the evidence and making the decision. *Reddick*, 157 F.3d at 720-21.

## SUMMARY OF THE ALJ'S FINDINGS

At step one of the five-step analysis used by the Commissioner, the ALJ found that plaintiff had not engaged in SGA since February 9, 2001. Tr. 14, 22; Finding 1.

At step two, the ALJ found that plaintiff had severe impairments, including fracture with osteotomy, hearing impairment, asthma, "depression versus dystheymia," personality disorder, and alcohol dependence in remission.  Tr. 14.

At step three, the ALJ found that plaintiff's impairments were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulation Part 404. *Id.*; Finding 2.

At step four, the ALJ found that plaintiff was able to perform her past relevant work as a telemarketer and home health care aide.  Tr. 21, 22; Finding 4.[2]  The ALJ so found after determining that plaintiff retained the RFC to perform a limited range of medium work.  Tr. 16. Because of her osteotomy, plaintiff is limited to occasional crawling and ladder, rope, or scaffold climbing.  *Id.*  Due to her hearing impairment and history of asthma, plaintiff must avoid concentrated exposure to noise, vibration, fumes, odors, dusts, gases, and poor ventilation.  *Id.* Because of her depression and personality disorder traits, plaintiff is limited to simple, routine, repetitive work with occasional public contact.  *Id.*  Plaintiff is able to sustain normal interactions with co-workers, but would not perform well as part of a team.  *Id.*

Alternatively, at Step Five, the ALJ also found that plaintiff could perform other work existing in significant numbers in the national economy.  Tr. 22, Finding 7; *see also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g).  This finding was based on the testimony of a VE that plaintiff could perform work as a small products assembly worker.  Tr. 22.

---

[2]  Finding 4 states that plaintiff was "unable" to perform her past relevant work. However, the VE testimony and the narrative part of the ALJ's decision, which contain findings that plaintiff could perform her past relevant work as a telemarketer or home health care aide, establishes that the word "unable" in Finding 4 is a typographical error.

**QUESTION PRESENTED**

Plaintiff argues that the ALJ erred by: (1) rejecting the opinions of treating and examining doctors; (2) rejecting plaintiff's subjective testimony about her symptoms; and (3) relying on VE testimony regarding plaintiff's employability that deviated from applicable standards. As a result of these errors, plaintiff seeks an order reversing the Commissioner's decision and remanding for an award of benefits. Because this court determines that the ALJ erred in rejecting both some medical opinions presented and plaintiff's testimony, further analysis regarding the VE's testimony and the ALJ's reliance thereon need not be reached.

**ANALYSIS**

1.      **Treating Physician Testimony**

As noted above, plaintiff argues that the ALJ erred in rejecting several opinions of treating and examining doctors. The opinions at issue concern plaintiff's social functioning.

An ALJ must provide clear and convincing reasons for rejecting uncontroverted expert opinions, and must provide specific, legitimate reasons for rejecting controverted expert opinions. *Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995); *see also Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (clear and convincing reasons must be provided to support rejection of a treating physician's ultimate conclusions). An ALJ who disregards medical opinions and makes contrary findings has effectively rejected them. *See Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996) ("By disregarding those opinions and making contrary findings, he effectively rejected them. His failure to offer reasons for doing so was legal error.").

"Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the

ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001)

(citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989)).  An ALJ need not accept a

treating physician's opinion that is conclusory, brief, and unsupported by clinical findings.

*Tonapetyan*, 242 F.3d at 1149 (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)).

However, an ALJ must give weight not only to the treating physician's clinical findings and

interpretation of test results, but also to the doctor's subjective judgments.  *Lester*, 81 F.3d at

832-33 (citing *Embrey*, 849 F.2d at 422).

Examining clinical neuropsychologist David Gostnell, Ph.D., saw plaintiff on November

29, 2001.  He diagnosed "major depression" and "dependent personality disorder" and opined:

"Both [plaintiff's] dependency and depression produce significant interference with her ability to

cope with work-related stresses, especially interpersonal pressures. . . ."  Tr. 246.  Doctor

Gostnell assigned plaintiff a Global Assessment of Functioning (GAF) score[3] of 50.  Tr. 246.

Ratings from 41 to 50 are described as:  "Severe symptoms (e.g., suicidal ideation, severe

obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or

school functioning (e.g., no friends, unable to keep a job)."  *See* DSM-IV, GAF Listings

(emphasis in original).

The ALJ commented that Dr. Gostnell lacks the vocational expertise to address plaintiff's

employability, but otherwise purported to "give appropriate credit to the opinion of Dr.

Gostnell."  Tr. 19-20.  However, Dr. Gostnell's opinion that plaintiff's impairments significantly

---

[3]  The GAF score describes an individual's psychological, social, and occupational
functioning, using a single measure based on symptoms of mental impairments, as well as life
stressors and physical impairments.  *See Am. Psychiatric Ass'n, Diagnostic & Statistical Manual
of Mental Disorders* 32-34 (4th ed. Text Rev. 2000) (hereinafter, DSM-IV).

8 - OPINION AND ORDER

interfere with her ability to cope with interpersonal pressures is contradicted implicitly by the ALJ's finding that plaintiff can "sustain normal interactions with coworkers." Tr. 16. The ALJ erred by effectively rejecting Dr. Gostnell's opinion without offering any reasons for doing so.

In determining plaintiff's mental RFC, the ALJ also effectively rejected the opinion of treating psychiatrist William Salbador, M.D., without explanation. Plaintiff saw Dr. Salbador on May 29, 2001, after plaintiff initiated psychiatric treatment at Unity, Inc. Doctor Salbador diagnosed major depressive disorder, recurrent with incomplete resolution of symptomatology, alcohohol dependence in full sustained remission, pain disorder with physical and psychological components, and dependent personality traits, and noted that plaintiff did not appear to be responding to her anti-depressant medication. Tr. 194-97. Doctor Salbador assigned plaintiff a GAF score of 45, indicating severe impairment in social, occupational, or school functioning. Tr. 196; *see also* DSM-IV, GAF Listings. The ALJ's finding that plaintiff can "sustain normal interactions with co-workers" was an implicit rejection of Dr. Salbador's opinion regarding plaintiff's social limitations, and the ALJ's failure to offer reasons for this rejection was legal error.

The ALJ also failed to address a similar opinion of examining clinical psychologist, Julie A. Wong-Ngan, Ph.D., that "hostility and passive-aggressiveness interfere with [plaintiff's] social interactions," leaving her moderately impaired in social functioning. Tr. 291-92.

When the Commissioner provides inadequate reasons for rejecting the opinions of a treating or examining physician, those opinions are generally credited as true as a matter of law. *Widmark v. Barnhart*, 454 F.3d 1063, 1069 (9th Cir. 2006) (citations omitted)*; see also Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004). These errors regarding the medical opinions

9 - OPINION AND ORDER

presented, coupled with the failure to fully credit plaintiff's symptom testimony, discussed

below, compel remand of this action.  Because it is clear from the record that, accepting this

evidence as true, the ALJ would be required to find plaintiff entitled to SSI, the remand shall

compel the SSA to calculate and award benefits.  *See Moisa v. Barnhart*, 367 F.3d 882, 887 (9th

Cir. 2004).

**2.      Plaintiff's Subjective Symptom Testimony**

Plaintiff also challenges the ALJ's evaluation of plaintiff's testimony.  Plaintiff asserts

that the ALJ failed to assess plaintiff's credibility adequately and therefore erred in discounting

her testimony.

If an ALJ finds that a claimant's testimony relating to limitations is unreliable, the ALJ

must make a credibility determination citing the reasons why that testimony is unpersuasive.  *See

Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).  The ALJ must identify specifically what

testimony is credible and what testimony undermines the claimant's complaints.  *See Lester*, 81

F.3d at 834 (citation omitted); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In evaluating a claimant's claim of subjective symptom testimony, the ALJ must

determine whether the claimant has produced objective medical evidence of an underlying

impairment which could reasonably be expected to produce the symptoms alleged.  20 C.F.R. §

404.1529(a); *Smolen*, 80 F.3d at 1281-82 (citation and quotation omitted).

The Ninth Circuit set out a threshold test in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir.

1986) (reaffirmed in *Bunnell*) to assist the ALJ in deciding whether to accept a claimant's

subjective symptom testimony.  If the claimant produces evidence that meets the *Cotton* test, and

there is no evidence of malingering, then the ALJ can reject the claimant's testimony about the

severity of symptoms only by offering specific, clear, and convincing reasons for doing so. *See Dodrill*, 12 F.3d at 918.

Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms must meet two tests. First, the claimant "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged. . . .'" *Bunnell*, 947 F.2d at 344 (quoting 42 U.S.C. § 423(d)(5)(A) (1988)); *see also Cotton*, 799 F.2d at 1407.

Second, he or she must show that the impairment or combination of impairments could reasonably be expected to (not necessarily that it did) produce some degree of symptom. This means that the claimant need not produce objective medical evidence of the *symptom*, or the severity thereof:

> Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the *Cotton* test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> * * *
>
> Finally, the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. This approach reflects the highly subjective and idiosyncratic nature of pain and other such symptoms. . . . Thus, the ALJ may not reject subjective symptom testimony under the *Cotton* analysis simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged.

*Smolen*, 80 F.3d at 1282 (emphasis in original) (citations omitted).

In addition to medical evidence, factors relevant to the ALJ's credibility determination include: a plaintiff's daily activities; the location, duration, frequency, and intensity of his or her

symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects

of any medication; treatment, other than medication; measures used to relieve symptoms; and

functional limitations caused by the symptoms. *Smolen*, 80 F.3d at 1284; *see also* 20 C.F.R. §

404.1529(c)(3).

"The ALJ must state specifically which symptom testimony is not credible and what facts

in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284 (citation omitted). In

determining that subjective testimony is not credible, the ALJ may rely on:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for
> lying, prior inconsistent statements concerning the symptoms, and other testimony by the
> claimant that appears less than candid; (2) unexplained or inadequately explained failure
> to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's
> daily activities.

*Id.* (citations and footnote omitted).

In sum, if a plaintiff has met the burden of showing that his or her impairment or

combination of impairments *could reasonably be expected to* (not that it did in fact) produce

some degree of the symptoms that the plaintiff's testimony describes, and there is no evidence

suggesting that the plaintiff is malingering, the ALJ may not reject testimony regarding the

severity of the plaintiff's symptoms unless there are clear and convincing reasons for doing so.

*Id.* at 1283; *see also Moisa*, 367 F.3d at 885.

Moreover, the ALJ is not permitted to disbelieve a plaintiff simply because no objective

medical evidence supports the plaintiff's testimony regarding the severity of subjective

symptoms from which the plaintiff suffers, particularly pain. *Robbins v. Social Sec. Admin.*, 466

F.3d 880, 884 (9th Cir. 2006) (citations and internal quotations omitted). To find a plaintiff not

credible, the ALJ must rely either on reasons unrelated to the subjective testimony (*e.g.*,

reputation for dishonesty), or on conflicts between the plaintiff's testimony and conduct, or upon internal contradictions in that testimony.  *Id*. (citation and internal quotations omitted).

The ALJ must provide a "narrative discussion" containing specific reasons for the finding and supported by the evidence in the record, and is required to "make clear" the weight the adjudicator gave to the individual's statements and the reasons for that weight.  *Id*. (citing SSR 96-7p and SSR 96-8p).

"While an ALJ may certainly find testimony not credible and disregard it as an unsupported, self-serving statement," a court cannot affirm such a determination "unless it is supported by specific findings and reasoning."  *Robbins*, 466 F.3d at 884-85 (internal quotation and citation omitted).

Plaintiff testified that her depression, coupled with trauma from incidents of childhood rape and abuse, causes her to "want to isolate from everybody."  Tr. 325.  She testified that she "can't be around people very much," and that "especially around men, I get angry, I get very anxious.  I get very scared."  Tr. 324, 327.  Plaintiff has one friend only, who must accompany her "everywhere," including grocery shopping, trips to the library, and while using public transportation, "[s]o I don't have any complications with men or other people."  Tr. 328.

Plaintiff's reported employment history indicates that she has been fired at least three times due to her "attitudes," twice due to her "personal life," and most recently because she was "not professional."  Tr. 75.

The ALJ found plaintiff's allegations not entirely credible because "[a]ll the listed activities reveal [plaintiff] engages in normal activities of daily living and her socialization skills are not significantly affected."  Tr. 16.  The activities cited by the ALJ include: taking public

transportation; preparing her own meals; sharing cleaning responsibilities with others at the shelter where plaintiff resides, including mopping, sweeping, bathroom cleaning, and taking out trash; managing her own money; doing "counted cross-stitch"; watching television; listening to the radio; showering and dressing; and using the library. These activities are primarily non-social in nature and are consistent with plaintiff's described social limitations.

No other justifications for discrediting plaintiff were provided by the ALJ. The Commissioner's post-hoc reliance on an examination showing possible symptom exaggeration by plaintiff is misplaced. The ALJ did not cite these results as a basis for finding plaintiff not credible. This court is "constrained to review the reasons the ALJ asserts." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

**3.    Remand**

As a result of the inadequate rejection of medical evidence and the inadequate explanation for rejecting plaintiff's testimony, this court concludes that a remand is appropriate in this matter. As noted above, 42 U.S.C. § 405(g) provides jurisdiction for this court to review administrative decisions in Social Security benefits cases.

While the first two sentences of Section 405(g) establish this court's jurisdiction, the fourth and sixth sentences of Section 405(g) set forth the exclusive methods by which district courts may remand an action to the Commissioner. *Shalala v. Schaefer*, 509 U.S. 292, 296 (1993); *see also Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).

Sentence four provides that the district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" and is "essentially a determination that the agency erred in some respect in reaching a decision to deny benefits." *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002) (quoting 42 U.S.C. § 405(g) and citing *Jackson v. Chater*, 99 F.3d 1086, 1095 (11th Cir. 1996)). A plaintiff who obtains a sentence four remand is considered a prevailing party for purposes of attorney fees even when the case has been remanded for further administrative action. *Id.* (citing *Schaefer*, 509 U.S. at 297-302).

Conversely, remands ordered pursuant to sentence six of Section 405(g) "may be ordered in only two situations: where the Commissioner requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency." *Akopyan*, 296 F.3d at 854-55 (citing *Schaefer*, 509 U.S. at 297 n. 2). Unlike sentence four remands, sentence six remands do not constitute final judgments. *Id.*

The issues presented in this action compel a remand under sentence four. Whether to remand under sentence four for an award of benefits, or for further proceedings, is a matter of judicial discretion. *Harman v. Apfel*, 211 F.3d 1172, 1177 (9th Cir. 2000).

A remand for further proceedings is unnecessary if the record is fully developed and it is clear from the record that the ALJ would be required to award benefits. *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). The rule recognizes "the importance of expediting disability claims." *Id.* (citation omitted).

In cases in which it is evident from the record that benefits should be awarded, remanding for further proceedings would delay effectuating the primary purpose of the Social Security Act, which is to give financial assistance to disabled persons because they cannot sustain themselves. *Id.*

The decision whether to remand for further proceedings turns upon the likely utility of such proceedings. *Harman*, 211 F.3d at 1179. In this matter, this court concludes that the record is fully developed and remand would serve only to prolong the application process and further deny plaintiff benefits to which she is entitled.

It is clear from the record that the ALJ must find the claimant disabled after crediting the evidence in question, and additional proceedings are unnecessary to determine plaintiff's entitlement to benefits. The record is fully developed, and further proceedings "would serve no useful purpose." *See Lester*, 81 F.3d at 834 (if evidence that was improperly rejected demonstrates that claimant is disabled, court should remand for payment of benefits).

Moreover, permitting the Commissioner a further opportunity under these circumstances to amend findings to comport with a denial of disability benefits is not in the interests of justice. *See Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) (if remand for further proceedings would only delay the receipt of benefits, judgment for the claimant is appropriate). Plaintiff is now fifty-seven years old, it has been more than six years since she applied for benefits, and further delays at this point would be unduly burdensome. *See Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990) (finding remand for benefits appropriate when claimant was sixty-four years old and it had been nearly four years since she applied for benefits).

///

16 - OPINION AND ORDER

**CONCLUSION**

Based on the foregoing, this court concludes that the record is fully developed and that further administrative proceedings would serve no useful purpose and would be unduly burdensome. Under the applicable standards, after giving the evidence in the record the effect required by law, plaintiff is unable to engage in any substantial gainful activity by reason of her impairments, and she is disabled under the Act. Accordingly, the decision of the Commissioner is reversed, and this case is remanded to the Commissioner for the calculation and award of benefits to plaintiff E. Jean Smiley.

IT IS SO ORDERED.

DATED this    18    day of May, 2007.


_____/s/ Ancer L. Haggerty_____
Ancer L. Haggerty
United States District Judge


17 - OPINION AND ORDER